# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 23, 2014 Session

## REGINALD FOWLER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 99048      Mary Beth Leibowitz, Judge**

---

**No. E2013-01554-CCA-R3-PC - Filed July 9, 2014**

---

Petitioner, Reginald Fowler, was convicted of aggravated arson following a bench trial, and he was sentenced to twenty years in the Tennessee Department of Correction. Following an unsuccessful direct appeal, he filed the instant petition for post-conviction relief raising the following issues: (1) whether he was denied a fair trial due to the alleged impairment of the trial judge; (2) whether ineffective assistance of trial counsel rendered his waiver of a jury trial involuntary; and (3) whether trial counsel's assistance was ineffective by failing to present the testimony of a pharmacologist at trial. After an evidentiary hearing, the post-conviction court denied relief. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Michael R. Tabler (on appeal); and John E. Eldridge (at post-conviction hearing), Knoxville, Tennessee, for the appellant, Reginald Fowler.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and TaKisha Fitzgerald and Leland Price, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

## I. Facts and Procedural History

### A. Facts from Trial

A lengthy recitation of the facts from petitioner's bench trial is contained in this court's opinion denying his direct appeal. *See State v. Reginald Fowler*, No. E2009-00293-CCA-R3-CD, 2010 WL 3774413, at *1-16 (Tenn. Crim. App. Sept. 29, 2010)*, perm. app. denied* (Tenn. Mar. 9, 2011). In sum, after arguing with his live-in girlfriend about his drug use, petitioner checked in to an extended-stay hotel in Knoxville for the purpose of smoking crack cocaine without interruption. At some point, a fire began in petitioner's hotel room. Hotel employees noted that a dresser had been pushed in front of the door to block entry into the room, the smoke detector had been disabled and concealed, and the fire extinguisher had been removed and placed in the adjacent laundry room. The State's expert witness opined that the fire had been intentionally set and originally noted four points of origin. Petitioner testified that the fire was accidental and presented an expert witness to support his contention. Nonetheless, the trial court credited the State's proof, found petitioner guilty of aggravated arson, and sentenced him to twenty years in the Tennessee Department of Correction.

### B. Facts from Evidentiary Hearing

Petitioner, through counsel, filed a petition for post-conviction relief on March 2, 2012, and an amendment thereto on March 9, 2012. The post-conviction court held an evidentiary hearing on June 3, 2013. The court heard testimony from petitioner, a pharmacologist, and trial counsel.

At the evidentiary hearing, petitioner presented the testimony of Dr. Glen Farr, a professor of pharmacy and pharmacology at the University of Tennessee. He explained that crack cocaine was made by using baking soda to separate the cocaine base, thereby creating a more flammable, smokeable, and potent drug. Cocaine in general is classified as a central nervous system stimulant. Crack cocaine is rapidly absorbed, and the user can feel the effects of the drug within seconds or minutes. The effects last for approximately one hour, after which the user succumbs to a depressed state and often uses more cocaine to continue the "high." Dr. Farr stated that symptoms of chronic use include confusion, anxiety, cocaine psychosis (user does not think clearly, almost psychotic), paranoia, and feelings of invincibility.

Post-conviction counsel posited a hypothetical based on petitioner's version of the events leading to his arrest and conviction for aggravated arson. Based on those facts, Dr. Farr opined that petitioner's act of pushing the dresser against the door indicated paranoia. Dr. Farr stated that petitioner demonstrated confusion in his mistaken belief that he had extinguished the fire when he had not done so. He further testified that petitioner's effort to conceal the fire by removing the smoke detector showed irrational thinking on his part. Witnesses' reports that petitioner appeared "nervous" and "jittery" were also consistent with cocaine use. In sum, Dr. Farr concluded that it was "unlikely that [petitioner] would have had the state of mind to intentionally set a fire." He said that petitioner had "a good thing . . . the room . . . isolation. . . . I would not think that a cocaine addict would want to mess that up by setting a fire."

On cross-examination, Dr. Farr acknowledged that cocaine use would not have factored in to his opinion if petitioner had been doing other things to cause the fire, like cooking noodles or smoking in bed, as indicated in three prior statements. The State clarified that the witnesses reported that petitioner looked "upset" rather than nervous or jittery, and Dr. Farr agreed that an "upset" person could retaliate against those who had caused him angst. Dr. Farr also conceded that a fire with four points of origin was more likely intentional than accidental. He stated that an addict could, through "rote memory," perform certain tasks such as driving to his drug dealer's house, driving to the liquor store, making purchases, and smoking crack cocaine by use of pure grain alcohol to ignite it. Finally, Dr. Farr admitted that he had not viewed the crime scene photographs or met with petitioner; his opinion was based solely on the facts as relayed by petitioner through his post-conviction counsel.

Upon questioning by the court, Dr. Farr also acknowledged that he did not read the trial transcript. He stated that the effects of any drug are "very individualized" and that the degree to which a user experienced effects was relative to how long, at what level, and by what method he had used. He concluded by stating that petitioner's actions were "consistent with someone under the effects of chronic cocaine use."

Petitioner testified next and offered his recitation of the facts underlying his conviction, which was consistent with his testimony at trial. He stated that he was faced with the decision of whether to waive his right to a trial by jury three minutes before the trial began. Petitioner said that trial counsel had represented him for over a year but had never broached the subject of waiving a jury before then. When trial counsel addressed it, petitioner told him that he would not agree to waive a jury trial if his ex-girlfriend, Sheryle Gusby, would be a witness. He believed that the trial judge, Richard Baumgartner, was "kind of fond of [Ms. Gusby]" based on his having "joked with her" and "made light" with her during a previous bond hearing. Trial counsel looked in the courtroom and did not see Ms.

Gusby. Upon this information, petitioner agreed to waive his right to a jury trial. However, after he signed the form and engaged in the colloquy with the trial court, Ms. Gusby entered the courtroom from a back room. Petitioner changed his mind and sought to have his case tried before a jury, but trial counsel advised him that he could not revoke his waiver.

Petitioner testified that he knew that the trial judge was the judge who presided over the drug court program, and he thought that the trial judge would have additional insight with regard to chronic cocaine usage. Petitioner noted that during the trial, he referenced the trial court being the "drug judge," which prompted the trial court to stand up and ask, "Are you trying to say that I sell drugs?" Trial counsel then explained petitioner's reference.

Petitioner recalled that the trial court "nodded off" during the arson investigator's testimony. When petitioner called it to the attention of trial counsel, counsel told him to "shut up" so he could hear the testimony. Petitioner stated that trial counsel "gave [him] a kind of look like, '[T]here's no way in the world I'm going to tell the Judge that he [was] asleep.'" Petitioner stated that the trial court fell asleep three times during his two-day trial. However, he recognized, "I know if I say it, there is no way that I'm going to win."

Petitioner explained that he told different versions of the facts because he was not going to admit that he was a cocaine addict. He could not tell his then-girlfriend, Ms. Gusby, the truth, even though "she knew in her heart what had happened." Petitioner noted that the trial court concluded that petitioner had set the fire intentionally because he was mad that Ms. Gusby had "put [him] out of her house."

The State called trial counsel to testify. He had practiced law since 1980 and had been an assistant district public defender since 1998. He became acquainted with the trial judge when they were both in private practice and served as co-counsel on a large federal case.

Trial counsel recalled that he was assigned to the trial judge's courtroom in 2007. Trial counsel noticed that in 2007 and 2008, the trial judge began to withdraw. The judge was not as "social" or "engaging" as he had been. In early 2008, the trial judge became impatient and often appeared to be "lost in the proceedings." On one occasion, trial counsel was an observer in the courtroom when the trial judge began to lower his head toward the desk. His head continued to lower until it was one to two inches above the desk, at which time the trial judge sat up and called a recess. According to trial counsel, the defense bar speculated about whether the trial judge had a drinking problem or was suffering the effects of medication for diverticulitis. Trial counsel noted that in July and August 2008, the trial judge "took a break," and when he returned, he was more engaged and focused than before. Approximately six to eight weeks following the trial judge's return, he heard petitioner's case.

Trial counsel testified that at a hearing regarding petitioner's bond, the trial judge commented that "'the jury's going to like . . . Mr. Fowler.'" He noted an "engagement" between petitioner and the trial court and said that their "quipping" with each other was "entertaining." Trial counsel characterized petitioner as a "smart man" who was "very pleasant to talk to" and who had a "really good sense of humor."

When asked whether he should have called a pharmacologist to testify at petitioner's trial, trial counsel stated, "I think it was effective. I wish I had done it. But no, it's not something I considered doing." However, he stated that Dr. Farr's testimony would have been "of greater value" if the case had been tried before a jury.

Trial counsel recalled that on the day of trial, there was a shortage of jurors. The idea of waiving the right to a trial by jury was mentioned, and trial counsel found the idea "appealing" because of the "engagement" between petitioner and the trial judge. He also believed that the trial judge, as the drug court judge, would recognize that the oddities in petitioner's story were "not that aberrant" compared to other drug addicts. Trial counsel stated that he and petitioner conversed about the possibility for approximately one hour, rather than for just three minutes, as petitioner alleged. He also clarified that the discussion focused more on the trial judge's "good disposition" toward petitioner than Ms. Gusby's rapport with the trial judge. In fact, trial counsel opined that the trial judge viewed Ms. Gusby as "a very angry woman" who was "bitter" about petitioner's drug use and the disappearance of many of her belongings to support his drug habit. Ms. Gusby also operated a home-based colon cleansing business by which he thought the trial judge was "put off." The trial judge engaged in "off-color" joking in that regard at times.

With regard to the trial judge's demeanor during trial, trial counsel testified that one specific time, he objected to testimony, and the trial judge was "lost" and could not recall what had been said. They had to repeat the testimony for his benefit. The trial judge was also "oppositional" to trial counsel's cross-examining the State's expert witness by use of a learned treatise. However, he characterized the trial judge's reaction to petitioner's calling him the "drug judge" as "quipping" during a "light moment" because the trial judge "knew full-well what he was referring to."

At trial, upon cross-examination by trial counsel, the State's expert witness changed his testimony to reflect two points of origin of the fire rather than the original four points he identified. However, trial counsel stated that the trial court kept referring to four or five points, as if he had somehow missed the testimony. Trial counsel was "amazed" and "flabbergasted" that the trial judge did not "get it." He "did not understand why [the trial judge] ignored the physical evidence."

-5-

Trial counsel stated that he believed that the trial judge had been "engaged in opiate abuse for a long time" and "that sustained intellectual analysis [was] not possible." He agreed that "operating in hindsight" and knowing what the trial judge had been through, he believed that the demeanor he observed at trial was the result of drug use. He acknowledged that although the trial judge's medical records indicated that he was not using prescription medications during petitioner's trial, he nonetheless could have obtained the medications through other means. Finally, contrary to petitioner's testimony, trial counsel indicated that he had not witnessed the trial judge "nod off," although his attention was not always focused on him.

Upon this evidence, the post-conviction court denied relief. This appeal follows.

## II. Analysis

Petitioner presents three issues for our review: (1) whether he was denied a fair trial due to the alleged impairment of the trial judge; (2) whether ineffective assistance of trial counsel rendered his waiver of a jury trial involuntary; and (3) whether trial counsel's assistance was ineffective by failing to present the testimony of a pharmacologist at trial.

### A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of

petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

### B. Alleged Impairment of the Trial Judge

Petitioner alleges that the trial judge was impaired during his trial and sentencing hearing. In support of this contention, petitioner claims that the trial judge became upset when he referred to the trial judge as "the drug judge" and that the trial judge "nodded off" three times during his bench trial. The State counters that petitioner failed to carry his burden of proof on this issue. We agree with the State.[1]

Former Judge Richard Baumgartner presided over petitioner's trial and sentencing hearing. On March 10, 2011, before petitioner filed his petition for post-conviction relief, former Judge Baumgartner resigned after pleading guilty to one count of official misconduct. In connection with another of former Judge Baumgartner's cases, the Tennessee Supreme Court entered an order addressing the effect of the trial judge's misconduct. *See* Order, *State v. Letalvis Cobbins,* No. E2012-00448-SC-R10-DD (Tenn. May 24, 2012). The court held that a trial judge's misconduct outside the courtroom does not constitute structural error "when there is no showing or indication in the record that the trial judge's misconduct affected the trial proceedings." *Id.* Order at 3. In that case, the court noted that appellant and his co-defendants failed to offer any proof that the original trial judge's misconduct outside the courtroom affected the integrity of their trials and that no such proof existed in the record. *Id.* Order at 4.

In denying relief on this claim, the post-conviction court made four observations: (1) "the incident most emphasized" by petitioner, his reference to the trial judge as "the drug judge," was refuted by trial counsel's testimony that it was merely "banter"; (2) petitioner's assertion that the trial judge "nodded off" during the proceedings was refuted by trial counsel's testimony that he did not observe any such instance; (3) although the records indicated that the trial judge abused alcohol and prescription medications prior to petitioner's trial, none of the reports "support a conclusion that [the trial judge] was impaired during the November 2008 trial or the January 2009 sentencing hearing"; and (4) trial counsel's argument that the trial judge was impaired, as evidenced by the judge's failure to comprehend the expert testimony, was "refuted by the trial judge's thoroughly logical explanation of his reasoning in finding the petitioner guilty."

---

[1] The State also maintains that this claim is waived because petitioner could have raised it on direct appeal. While the petitioner could have alleged on direct appeal that the trial judge fell asleep or reacted unreasonably to a comment, no proof of the trial judge's misconduct was available at that time. Thus, petitioner could not have fully developed this issue on direct appeal.

We agree with the post-conviction court. Petitioner has presented no credible evidence that the trial judge was impaired during the proceedings or that his misconduct outside of the courtroom affected his ability to preside over petitioner's trial and sentencing hearing. Petitioner is not entitled to relief on this claim of error.

### C. Waiver of Right to a Trial by Jury

In his initial brief, petitioner alleged that he did not knowingly, intelligently, and voluntarily waive his right to a trial by jury because he relied upon trial counsel's incorrect "assurances" that Ms. Gusby would not testify at trial. The State argues that this issue is waived because petitioner could have raised it on direct appeal but failed to do so. We agree with the State.

Tennessee Code Annotated section 40-30-106(g) provides:

A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:

(1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or

(2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

In this case, neither of the exceptions to waiver applies. Petitioner, through counsel, could have addressed the waiver of his jury trial on direct appeal, but he failed to do so. This issue, framed as a freestanding claim, is waived for our review.

However, in his reply brief, petitioner clarified that although his initial argument on this point was "succinct," he did *not* intend to raise a freestanding claim and that he relied upon a claim of ineffective assistance of counsel to raise this issue for our review. We note that petitioner failed to cite any legal authority whatsoever in support of this claim in either his initial brief or his reply brief. Appellate briefs *shall* contain "the contentions of the appellant with respect to the issues presented, . . . including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on; and . . . for each issue, a concise statement of the applicable standard of review." Tenn. R. App. P. 27(a)(7). In light of his failure to properly present this issue for our review, we conclude that he has waived appellate review of this issue. *See* Tenn. Ct.

Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); *see also Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011).

### D. Failure to Present a Pharmacologist as an Expert Witness at Trial

Petitioner claims that his trial counsel performed ineffectively by failing to present an expert to testify at trial about the effects of crack cocaine use on an individual. The State argued to this court that such testimony would have been inadmissible at trial.

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

-9-

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

In denying relief on this claim, the post-conviction court noted, "The impact of the testimony of Dr. Farr is weakened by several things. First, Dr. Farr had never met or interviewed the petitioner." The court continued,

> Secondly, one reason petitioner and trial counsel wanted [the trial judge] to hear the case was because [the trial judge] was administrator over the drug court and knew of the effects of cocaine. In fact, in his decision, the trial judge acknowledged [petitioner's] chronic use and cocaine use on the date of the crime and then said[,] "[H]is conduct is not going to be necessarily rational conduct[,]" and so[,] "[Y]ou can't attribute his actions on that day necessarily to logical thinking or to conduct that someone who is not smoking crack cocaine, or under the influence of cocaine[,] might do."

> The above observation is simply consistent with Dr. Farr's testimony. The trial judge already knew what Farr could have told him. Furthermore, it is common sense, and was argued to the judge that [petitioner's] guilty conduct might not be because he committed arson but because he didn't want his cocaine use discovered. No expert is needed for that observation.

Accordingly, the post-conviction court found that trial counsel's representation "was well within appropriate professional standards" and "was *not* ineffective assistance of counsel." (emphasis in original).

The evidence does not preponderate against the post-conviction court's findings in this regard. The trial judge presided over the drug court program and was well-versed in matters concerning drug addicts, drug-induced behaviors, and effects of chronic cocaine use. The trial judge's statements when he delivered his ruling indicate that he considered petitioner's explanations and equated petitioner's actions with irrational and illogical thinking. As trial counsel opined, perhaps an expert would have been more germane at a jury trial. However, failure to call such an expert at petitioner's trial did not amount to ineffective assistance. Petitioner is not entitled to relief on this claim.

**CONCLUSION**

Based on our review of the record, the parties' briefs, and the applicable law, we affirm the judgment of the post-conviction court.

_____

ROGER A. PAGE, JUDGE